# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA HARGROVE,    Plaintiffs,    v. CITY OF BAKERSFIELD, et al.,    Defendants. | Case No.: 1:17-cv-1743 JLT ORDER ON MOTIONS IN LIMINE (Docs. 49, 51, 52, 53) |

Plaintiffs and Defendants now bring motions in limine to establish the evidence that may be offered at trial.

## I.    Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of

evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Jonasson, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely to the moving party.

**II.     Plaintiff's Motions in Limine**

    **A.     Motion in Limine No. 1 (Doc. 51)**

At the hearing on the motions in limine, defense counsel requested a further opportunity to meet and confer on this topic. Thus, the Court **RESERVES** ruling on this motion.

### B. Plaintiff's Motion in Limine No. 2 (Doc. 52)

The parties agreed at the hearing on the motion, that they would supplemental briefing on the topic no later than Friday, October 11, 2019. Counsel SHALL address the standards for Fed.R.Evid. 608(b).

### C. Plaintiff's Motion in Limine No. 3 (Doc. 53)

The plaintiff asserts that the defendants may refer to the arear where the incident occurred as a "high crime area" and will refer to "gangs, drugs, and other incidents that had nothing to do with Plaintiff." (Doc. 53) For the reasons stated above, to the extent the defendants considered the "high crime" nature of the area where the incident occurred or other incidents not involving the plaintiff in deciding how to address the situation with Ms. Hargrove, the evidence is admissible. High crime areas may pose unique safety challenges to law enforcement, the Court finds that the probative value of the evidence outweighs any minimal prejudicial effect. Ruvalcaba, at 1328. However, the defense SHALL NOT refer to specifics if any particular event without first raising this with the Court. Thus, the motion is **DENIED**.

## III. Defendants' Motions in Limine

### A. Motions in Limine No. 2 (Doc. 49 at 12-14)

The defendants seek to exclude statements made by Chief Martin immediately after the incident in which he purportedly admitted that the officers acted improperly during the contact with Ms. Hargrove. (Doc. 49 at 12-14) They argue the statements are irrelevant to the issues and their probative value is substantially outweighed by the prejudicial effect. Id. at 13.

The plaintiff argues the evidence is "strongly probative as to both liability and the municipal liability claims." (Doc. 67 at 5) However, Ms. Hargrove provides argument supporting only the municipal liability claim. The Court agrees that the evidence is admissible against the City and it may be admitted in the *Monell* phase of the trial. If Chief Martin testifies in the Monell phase about his statements, is permitted to testify as to his basis for knowledge at the time he made the statements and whether the investigation varied his initial beliefs. This means he is entitled to discuss every portion of the investigation that has convinced him that his initial impressions were not well-founded.

However, as noted, the plaintiff offers no support for her bare conclusion that the evidence

bears on individual liability. Indeed, as both sides have noted, the propriety of the officers' conduct depends upon what was known to them at the time. Just as any statements by city officials exonerating the officers would not be admitted to bolster the officers' claims, evidence condemning them, likewise, does not advance the issues related to individual liability. Consequently, because the Court finds there is no probative value to the evidence as to individual liability (Fed.R.Evid. 403)[1], the motion is **GRANTED in PART** and **DENIED in PART**.

### B. Defendants' Motion in Limine No. 3 (Doc. 49 at 14-19)

The defendants seek to exclude evidence that the conduct of the officers was investigated as to other incidents. (Doc. 49 at 14-19) The defendants argue this evidence details events that are factually different than those at issue, constitute character evidence for which there is no exception under Federal Rules of Evidence 404(b) and does not bear on the questions presented.

In one incident, Officer Moore was disciplined for improperly questioning a suspect and for failing to report this conduct separate from his incident report in which he described the questioning. Id. at 14-15. In another, Officer Moore was accused of careless workmanship and dishonesty during his investigation of a commercial burglary. Id. The investigation revealed that the claim of careless workmanship was unfounded and the claim related to dishonesty was not sustained. Id. In the final instance, Officer Vasquez was accused of exceeding his authority and for being discourteous related to an investigation of a drunk driver. Id. Both claims were determined to be unfounded.

The plaintiff argues this evidence should be admitted because it bears on the officers' credibility. (Doc. 67 at 8-9) However, though arguing that these incidents demonstrate the officers' "wrongful intent, motive, or pattern of relevant conduct" (Doc. 67 at 8), she doesn't explain how. The events are significantly different from those before the Court. They do not demonstrate the exceptions the plaintiff asserts and do not demonstrate that the City should have been on notice that the officers' conduct placed Ms. Hargrove at risk of the constitutional violation she alleges she suffered. From that perspective, therefore, the probative value of the evidence is quite low.

Moreover, the claims are not impeaching. There is no evidence that either officer lied about

---

[1] Moreover, though Ms. Hargrove asserts state law claims as well, liability of the City is vicarious only.

these claims having been made. There mere fact that the claims were made, does not impeach the officers' credibility. On the other hand, the claim that Officer Moore was dishonest presents a more difficult question. If the claim was determined to be true, the question would be easier. However, the evidence now shows only that Officer Moore may have been dishonest about the claimed incident, or he may not have been dishonest. Admitting this evidence does not shed light on the questions the jury must determine. Consequently, the Court finds that the scant probative value of this evidence is overwhelmingly outweighed by the unfair prejudicial effect.

As noted above related to Ms. Hargrove's motion in limine number B.(1.), Federal Rules of Evidence 608(b) prohibits extrinsic evidence to be admitted to prove specific instances of conduct for the purpose of attacking the witness's character for truthfulness." Thus, the motion is **GRANTED**.

### C. Defendants' Motion in Limine No. 4 (Doc. 49 at 19-21)

The defendants seek to exclude evidence of the Internal Affair investigation. (Doc. 49 at 19-21) They argue that the investigation and the conclusions of the investigation are irrelevant. Id. The defense asserts that this evidence would be "unfairly prejudicial" and "highly confusing to the jury." Id. at 21.

The plaintiff argues that the statements of the officers given during the Internal Affair investigation are admissible. (Doc. 67 at 10) Ms. Hargrove asserts that she has no intention of informing the jurors that the statements were made in connection with the Internal Affairs Investigation. The Court agrees that with this clarification, the statements may be admitted.

Ms. Hargrove asserts also that the evidence is admissible as to the municipal ratification claim and the Court agrees with this as well. Thus, the motion is **GRANTED in PART**. The plaintiff may admit the defendants' statements only, and she may not indicate in any fashion that the statements were given during an Internal Affairs investigation. During the Monell phase, the report may be admitted in its entirety and the plaintiff may demonstrate that it constituted an Internal Affairs investigation.

### D. Defendants' Motion in Limine No. 6 (Doc. 49 at 19-21)

The defense seeks to exclude any reference to settlements negotiations in this case or in other cases. (Doc. 49 at 14) The plaintiff seems to agree but contends that this should preclude the defense from calling Joseph Whittington as a witness. (Doc. 67 at 11) Mr. Whittington represented a plaintiff

5

who sued the City of Bakersfield. Ms. Hargrove has listed Mr. Wilson as a witness in this case, presumably to demonstrate municipal liability.

Federal Rules of Evidence 408, in general, prohibits the introduction of evidence related to settlements when used to challenge the amount or validity of a claim. This evidence is admissible for other purposes. At this point, the Court has insufficient information to determine the purpose for introducing the email identified by the plaintiff in her opposition sent by Mr. Whittington. Thus, the motion is **GRANTED in PART** and **RESERVED in PART**.

### E. Defendants' Motion in Limine No. 7 (Doc. 49 at 23-24)

The defense moves the Court to exclude the statistics "Year end reports." (Doc. 49 at 23-24) It is unclear to the Court exactly what these reports are or the information they contain or, even who prepares these reports and for what purpose. The title of the motion in limine identifies them as "Internal Affairs Division Year End Reports" so, presumably, they are internal documents maintained by the Bakersfield Police Department. In any event, the defense indicates that the report contains "various statistics pertaining to use of force including the number of total incidents, the type of force used." Id. at 23.

The defense argues that the data is hearsay and that the plaintiff's expert lacks the ability to lay a foundation for the documents. As a preliminary matter, experts are entitled to rely upon hearsay and they need not have personal knowledge of the documents before relying upon them. Also, as to the City, the hearsay objection may be overcome by offering these statements against the City as an admission.

On the other hand, the defense notes that the plaintiff's expert did not review the deposition of the witness who testified about these statistics at deposition, did not identify the reports as a basis for the expert's opinion or discuss the reports or their relevance in the expert report. (Doc. 49 at 23)

The plaintiff agrees that the evidence is admissible only during the Monell phase of the trial. (Doc. 67 at 12) Though not addressing whether her expert can testify about these reports, Ms. Hargrove asserts that the information may be introduced through the City's witness, though she does not discuss exactly how the information would assist the jury or its probative value. The Court agrees that it lacks sufficient information to determine this motion now so **RESERVES** ruling on the motion

now.

### F. Defendants' Motion in Limine Nos. 9 & 11 (Doc. 49 at 25-26)

The defense moves to preclude the plaintiff from referencing other claims of police misconduct during the individual liability phase of the trial. (Doc. 49 at 25-37) The plaintiff reports that she has no intention of referencing other events. However, she *does* intend to testify that just before the officers used force on her, she said something, "to the effect that she did not want to be another black person who was the victim of excessive force." (Doc. 67 at 13) Due to this fear, she asserts that after saying this, she attempted to use her phone to video record the contact with the officers. She claims that her statement explains why she tried to take out her phone and that both of these actions together form the basis for her claim under the First Amendment.

When she was interviewed by Sergeant Calvin, she claimed to have been "scared" that the she "was going to get shot" due to the events that were "happening all around the world." (Doc. 67 at 13) She continued, "I thought maybe – cause I didn't do anything. . . . I thought, is it my time to die? . . . Because you see what's going on, officer." Id. The plaintiff reports that to this, Sergeant Calvin responded that, "Yeah, but that's fake news." Id. The plaintiff then asserts that, "Then a conversation takes place where the sergeant claims that in other incidents, 'I'm sure they were justified' and 'the cops do the right thing,' while Plaintiff disagrees." Id. The plaintiff concludes that, "Since these statements are relevant to her retaliation claim – and even a necessary part of that claim – she should not be precluded from introducing that evidence." Id. The Court agrees, in part.

The statement Ms. Hargrove made <u>at the scene</u> to the effect of not wanting "to be another black person who was the victim of excessive force" may be admitted. She can explain what she meant by this, but she may not detail any other event or offer her opinions as to any other events, even in general. She has not shown that the portion of the conversation with Sergeant Calvin that she details in her opposing papers (Doc. 67 at 14) bears on the First Amendment claim. Thus, at least as of this time, these statements don't appear to be relevant. Consequently, the motion is **GRANTED in PART** and **DENIED in PART**.

### G. Defendants' Motion in Limine No. 16 (Doc. 49 at 25-21)

The defense moves to exclude the testimony of Dr. Pangarkar who will opine that the plaintiff

will need future medical treatment. Dr. Pangarkar's report indicates Ms. Hargrove needs the following treatments:

- I would recommend initiation of Gabapentin for symptoms of right leg neuropathic pain. This medication should be started at 100mg QHS and titrated to 600mg TID. Based on GoodRx ®, **the average cash price** of this medication is $149.95/month. The need for this medication will be for the foreseeable future.

- Steroid injections performed under fluoroscopy may provide adequate pain relief for her low pain. These injections can be safely performed 2-3 times per year, as needed. In my experience, 4 to 5 of these procedures is sufficient to reduce pain sufficiently to participate in a functional restoration program. The cost of steroid injections varies but **is typically $1,400.00 to $1,500.00 range**.

- The four-week functional restoration program at UCLA **runs $29,500.00**.

- [I]f she is still having residual symptoms [after adding Gabapentin], adding Duloxetine at 60mg may help (along with the musculoskeletal pains) . . . **The average cash cost of Duloxetine 60mg on GoodRx ® is 156.24/month.**

- I have recommended she follow closely with her Psychiatrist and therapist. Cognitive behavior therapy, along with mindfulness-based stress reduction would help significantly and I would suspect she would benefit from twenty-four sessions. Prices vary in Southern California for behavioral health but **average cost in Los Angeles is $500/session.**

(Doc. 49 at 26-30) The defense asserts that Dr. Pangarkar failed, in essence, to provide information about the reasonable value of these treatments and also failed to express the costs Ms. Hargrove will actually pay. Likewise, he failed to express to a reasonable medical certainty the period over which Ms. Hargrove will require Gabapentin.

The plaintiff argues that Dr. Pangarkar provided the reasonable value of the treatments. (Doc. 67 at 14). However, though claiming this, the plaintiff provides no evidence that this is true.

In a § 1983 case, federal law provides no guidance as to the measure of damages. Thus, the Court is required to consider "principles derived from the common law of torts." Memphis School District v. Stachura, 477 U.S. 299, 306 (1986). Thus, the Court should consider "a state-law limitation of damages," such as the one described by Howell v. Hamilton Meats & Provisions, Inc, 52 Cal.4th.541 (2011), unless it inconsistent with Section 1983's purposes of compensation and deterrence. Chaudhry v. City of Los Angeles, 751 F.3d at 1103. The Court also may consider Section 1983's "subsidiary goals of uniformity and federalism." Hardin v. Straub, 490 U.S. 536, 539 (1989).

In California, under Howell, a plaintiff may not present evidence of the full amounts the costs of past medical treatment that were billed, when a lesser amount was accepted in payment. In

Corenbaum v. Lampkin, 215 Cal.App.4th 1308, 1333 (2013), the court held that the full amount bill for past medical treatment, likewise cannot be introduced as evidence of the reasonable cost of future medical care.

The situation before the Court here, is different. The plaintiff is not seeking compensation for costs for past medical treatment and is not seeking to introduce evidence of those past costs to support the claim related to future medical costs. Rather, she seeks to introduce expert testimony as to the cost of future medical treatment, without regard for past costs. As noted above, there is no showing that the expert opinioned that the costs he estimated were reasonable or that he provided a foundation for his opinions related to these costs. Given this factual setting, the Court is not convinced that Howell or Corenbaum provide much guidance.

The Court finds the factual situation here different than that of Reed v. City of Modesto, 2015 WL 1889048, at *1 (E.D. Cal. Apr. 24, 2015). In Reed, this Court refused to allow an expert to testify about future life care costs when it was apparent from the face of the report that the expert failed to consider the true amounts the plaintiff would pay. Here, as noted, the report appears to attempt to offer the amounts a person without insurance would pay by noting the "average cash price," for the various treatments.

According to the Ninth Circuit's Model Jury Instruction 5.1, a plaintiff make seek damages that "will reasonably and fairly compensate the plaintiff for any injury . . .caused by the defendant." This instruction admonishes jurors not to rely upon speculation, guesswork or conjecture. Id. The Ninth Circuit's Model Jury Instruction 5.2 allows a plaintiff to recover, "The **reasonable value** of necessary medical care, treatment, and services that with reasonable probability will be required in the future." (Emphasis added) This instruction is consistent with California law and is consistent with the goals of § 1983. Damages for future medical costs should reflect what Ms. Hargrove can reasonably anticipate incurring and should not constitute a windfall.

Dr. Pangarkar's report fails to detail whether he considered Ms. Hargrove's unique situation. For example, as the defense argues, Dr. Pangarkar opined that in Los Angeles, the cost of, "[c]ognitive behavior therapy, along with mindfulness-based stress reduction" costs about $500 per hour. Assuming there is evidence that the need for CBT and stress reduction therapies was caused by the

9

incident, the Court lacks sufficient information to understand why the costs imposed in Los Angeles should apply. If Ms. Hargrove is intending to engage in this therapy in Los Angeles, that is her decision and the defense has no say in it. However, the defense is entitled to question whether Dr. Pangarkar's opinion that she would engage in therapy in Los Angeles is based upon any foundation, whether it is reasonably likely that she will travel to Los Angeles for this treatment and, in fact, whether Ms. Hargrove will engage in the treatment at all. As stated, however, the Court lacks information to know whether Dr. Pangarkar detailed a foundation for these cost estimates at his deposition or, indeed, whether he was asked about it. Thus, the ruling on this motion is **RESERVED**. If the foundation for his cost opinions has not yet been documented, Dr. Pangarkar **SHALL NOT** offer any opinions about the cost of the plaintiff's future medical treatments without first being presented for examination at a Rule 104 hearing outside the presence of the jury.

### G. Defendants' Motion in Limine No. 18 (Doc. 49 at 31-32)

The defendants seek to exclude information not known to them at the time of the contact with Ms. Hargrove. (Doc. 49 at 31-32) The defendants argue that this includes information that the suspect was bald and had a goatee. Id. The plaintiff argues this information should not be excluded because a reasonable officer would not have acted on the description given by dispatch but would have inquired further before doing so. (Doc. 67 at 17)

The parties agree that the officers were that the suspect was a black man[2] armed with a machete, dressed in a white t-shirt, carrying a pink backpack heading east on Ming Avenue. (Doc. 67 at 17; Doc. 49 at 31) The plaintiff admits that "[n]ot all of the information that was transmitted to the dispatcher in the 9-1-1 call was communicated to the defendant officers before they targeted, detained, and arrested Hargrove. (Doc. 67 at 16) However, the plaintiff argues that because she was straddling a bicycle and had a black backpack[3], that her description was so dissimilar as to have required the officers to not detain her until they gathered additional facts. At its most basic, this is an argument for the jury and is a question the jury will need to resolve.

---

[2] There appears to be no dispute that Ms. Hargrove appeared to be male on the day of the events and that the officers believed she was male until after the event was over.
[3] Officer Moore described it in his report as black and red.

10

The plaintiff argues that it was known—though not to the individual defendants—that the suspect was bald and had a goatee and that they reasonably could have known this. Presumably, she asserts that the defendants could have contacted the officers on scene of the attack by the machete-wielding suspect, to obtain a more complete description of the suspect, and that their conduct should be judged based on the information not known to them. This argument is contrary to law. According to Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995), evidence about what was known to the officers at the time of the incident bears on the facts and circumstances of the event; evidence that was not known to them does not.

The Court rejects the argument that Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir. 1997), dictates any different result. In Liston, when the officers executed a search warrant for a person, Hill, they should have noticed that the house at issue had a "For Sale" sign in front of it which also had a "Sold" sticker adhered to it. Id. at 974-975. Though the officer denied that the "Sold" sticker was attached, the Court reversed the grant of the motion for summary judgment because if the sticker was there, it should have informed the officers that the people in the house may not be the person they sought. Id. Though the Court does not exclude that other cases could present a factual situation in which information that was knowable to the officers should be considered, the facts of this case do not. Therefore, the motion is **GRANTED**.

### G. Defendants' Motion in Limine No. 20 (Doc. 49 at 25-21)

The defense seeks to exclude the incident report, the use of force report, selected police department policies and certain POST Learning Domains. (Doc. 49 at 32-34)

#### 1. The incident report and the use of force report

The plaintiff asserts, and the Court agrees, that the statements the defendant officers make in the these reports are not hearsay (Fed.R.Evid. 801(d)(2)) though the document does contain hearsay. Thus, the motion is **DENIED** as to the statements the defendant officers make.

#### 2. BPD policies and POST Learning Domains

The defense argues, and the Court agrees, that these documents are not admissible during the liability phase of this case. Whether the officers' conduct comported with the Constitution is the question, not whether the officers' conduct comported with the BPD policies or POST standards.

11

Whren v. United States, 517 U.S. 806, 815 (1996) [Local policies and procedures are "an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct."]

The Court agrees with the rationale in Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003), that when a court is asked to consider whether an officer was on notice that his conduct violated the Constitution, evidence that the local policies told him that his conduct was unconstitutional could be considered when evaluating a claim for qualified immunity. In taking the position that Drummond makes these policies admissible, the plaintiff ignores the facts of Drummond and its context.

Thus, as to the individual liability phase of the trial, the motion is **GRANTED in PART**. In the individual liability phase of the trial, the experts may discuss the POST Learning Domains when testifying about how a reasonably well-trained officer in California would respond in relevant factual circumstances, assuming they will offer these opinions and assuming they relied up the Learning Domains in forming their opinions. Witnesses **SHALL NOT** suggest that conduct inconsistent with Learning Domains determines whether the Constitution is violated.

The defendant officers **may be** questioned about whether they received POST training and whether their training was current as of the day of the events. The specifics of the Learning Domains or the training they received related to the Learning Domains is not relevant, they **may not** be questioned about it and the Learning Domains may not be introduced. As to the state law claims, the local policies are admissible **only if** they set a standard of care that is higher than that set by the Constitution.

As to the Monell phase, the motion is **DENIED**.

**G.     Defendants' Motion in Limine No. 23 (Doc. 49 at 34-37)**

At the hearing on the motions in limine, defense counsel requested a further opportunity to meet and confer on this topic. Thus, the Court **RESERVES** ruling on this motion.

IT IS SO ORDERED.

Dated:     **October 7, 2019**                    **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE

12